UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| BRASFIELD & GORRIE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:18-cv-00066-GFVT-EBA |
| | ) | |
| v. | ) | |
| | ) | |
| HARROD CONCRETE AND STONE CO., | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendant. | ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This is a case about concrete. For thousands of years, builders have created magnificent and lasting structures using concrete as the primary building material—and although the composition of concrete has changed over the centuries, the longevity appeal of concrete has remained.[1] In 1875, the first concrete home was built in the United States, and it still stands today.[2] In 1904, Cincinnati, Ohio, became home to the Ingalls Building, which is still standing and is the first concrete high-rise building ever constructed.[3] Concrete is built to last. However, problems with concrete sometimes do arise, and cracks in concrete can lead parties to search for cracks in contracts.

At issue in this case is whether Harrod Concrete and Stone Co. breached its contract with Brasfield & Gorrie, LLC by failing to provide concrete that met certain specifications. Harrod

---

[1] For a deep dive into the history and development of cement and concrete, *see* Per Jahren and Tongbo Sui, *History of Concrete: A Very Old and Modern Material* (2017).
[2] *See* Nick Gromicko & Kenton Shepard, *The History of Concrete*, Int. Assoc. of Cert. Home Inspectors, https://www.nachi.org/history-of-concrete htm (last visited Apr. 9, 2021).
[3] *Id*.

has filed a motion for summary judgment, arguing that there are no genuine issues of material fact and that Harrod should therefore prevail as a matter of law.  For the reasons set forth herein, Harrod's Motion for Summary Judgment will be DENIED.

## I

This case arises out of a contract dispute between Brasfield and Harrod over concrete that Harrod provided for a mixed-use development in Lexington, Kentucky, known as the Summit at Fritz Farm.  Brasfield, the general contractor, contracted with Harrod for the supply of concrete for the project.  [R. 47-1 at 2; R. 50 at 5.]  The concrete specifications were prepared by Nimrod Long and Associates, Inc., a landscape architecture firm and third-party defendant in this case.  [R. 47-1 at 3.]  Harrod supplied vast amounts of concrete prepared to various specifications for buildings, infrastructure and the hardscape, and Brasfield accepted the concrete as it was delivered throughout the entirety of the project.  *Id.* at 7.

The majority of the deck washes, which are a part of the parking structures built for the Fritz Farm project, were poured around August of 2016, and the hardscape features were placed in January through August of 2017, with the majority being placed in February through May of 2017.  [R. 47-1 at 2; R. 50 at 11.]  In February of 2018, less than one year after the project was completed, the owner informed Brasfield that some of the deck wash concrete and hardscape concrete began "scaling" or flaking into small pieces.  [R. 47-1 at 3; R. 50 at 6.]  Ten days after receiving notice of the scaling from the owner of the development, Brasfield reached out to Harrod through counsel regarding the scaling for assistance with the remediation efforts.  [R. 47-1 at 15; R. 50 at 11.]  Brasfield also retained consultants to test the failing concrete, and according to Brasfield, the consultants determined that the primary cause of the concrete failure was low air content that did not comply with the specifications of Harrod's mix designs.  [R. 50

at 12.]  Harrod declined to assist in the remediation efforts, and Brasfield spent over $600,000 on remedial work, arguing that it was contractually responsible to the project owner for making the repairs.  [R. 47-1 at 3; R. 50 at 14.]  Brasfield ultimately repaired approximately 10,000 square feet of the concrete out of approximately 110,000 square feet that was originally poured.  [R. 47-1 at 3.]  As part of the remedial work, Brasfield also resurfaced the parking deck washes.  *Id.*  On November 16, 2018, Brasfield filed suit against Harrod.  [R. 1.]

Both parties agree that the damage to the concrete was caused by freeze-and-thaw conditions.  [R. 47-1 at 3; R. 50 at 1.]  Brasfield argues that the freeze-thaw conditions damaged the concrete because of low air entrainment levels that did not meet the contractually agreed-upon levels.  [R. 50 at 1.]  Brasfield specifically argues 1) that the Hardscape Specifications specified that the concrete would contain four to six percent entrained air and Harrod prepared a mix design stating that the concrete provided would contain six percent entrained air and a 0.532 water-to cement ratio; 2) that Harrod supplied concrete with less than six percent air content, and 3) that Brasfield sustained damages because Harrod's concrete failed to meet the contractual specifications.[4]  [R. 1-2 at 5; R. 1-3 at 2; R. 1-4; R. 50 at 3–5.]

Harrod, on the other hand, argues that the scaling, which only occurred on less than ten percent of the hardscape concrete, was caused by a variety of other factors of which Brasfield is ultimately responsible.  [R. 47-1 at 3, 7.]  Specifically, Harrod argues 1) that it provided concrete that satisfied the mix designs and specifications; 2) that Brasfield failed to test the concrete at the time of delivery as required; 3) that Brasfield failed to properly place and finish the concrete; and

---

[4] Brasfield also argues that Harrod was aware of deficiencies in the hardscape specification provided by Nimrod but failed to communicate those concerns to Brasfield.  [R. 50 at 10.]  Specifically, Harrod's plant manager who prepared Harrod's mix design testified that he questioned the hardscape specification but "just kept it, I guess, my question to myself." *Id.*

3

4) that the experts actually point to a number of factors for the concrete scaling.[5]  [R. 47-1 at 5–19.]

On January 25, 2021, Harrod filed this Motion for Summary Judgment.  [R. 47.]  Brasfield Responded on February 16, and Harrod filed the Reply on March 2.  [R. 50; R. 54.]  This matter is now ripe for review.  The issue in this case is whether the concrete scaling was caused by Harrod's failure to supply concrete for the project that conformed with their contractual obligations, Brasfield's failure to properly cure or finish the concrete, or some combination of these factors.

## II

Harrod makes the following four arguments as to why its Motion for Summary Judgment should be granted: 1) Brasfield lacks standing to pursue a claim against Harrod; 2) the breach of contract allegations against Harrod must be dismissed; 3) the breach of warranty claims against Harrod must be dismissed; and 4) the negligence claims must be dismissed.  [R. 47-1.]  Because the Court granted Brasfield's request to remove its negligence claims from the Complaint [*see* R. 57], the Court need not address Harrod's fourth argument because Brasfield's negligence and negligent misrepresentation claims are no longer a part of this litigation.[6]  Harrod's remaining three arguments will be addressed in turn.

---

[5] Harrod contends that Brasfield engaged two consulting groups to test the concrete and concealed the findings of one of the groups, until compelled by discovery to disclose, that the scaling was due to finishing errors by Brasfield instead of air entrainment levels.  [R. 47-1 at 16.]

[6] The Court granted Brasfield's request to remove counts III and IV from the Complaint but denied Brasfield's Motion to Amend in all other respects because of undue delay and prejudice to Harrod.  [R. 57.]  However, because the Court is denying Harrod's Motion to Dismiss and any updated facts Brasfield wanted to include in the Amended Complaint were uncovered during discovery and are therefore known to both parties, Harrod is not ultimately prejudiced by the partial denial of its motion to amend.

**A**

An initial matter is the question of standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought") (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Standing is a threshold inquiry in every federal case that may not be waived by the parties. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Planned Parenthood Ass'n of Cincinnati, Inc. v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). "To satisfy the 'case' or 'controversy requirement' of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted). Plaintiffs' injury-in-fact must be both particularized and concrete. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). Further, a "concrete" injury is a de facto injury that actually exists. *Id.* Finally, "a plaintiff must also establish, as a prudential matter, that he or she is the proper proponent of the rights on which the action is based." *Haskell v. Washington Twp.*, 864 F.2d 1266, 1275 (6th Cir. 1988) (citations omitted).

Here, Harrod argues that Brasfield lacks standing because the project owner incurred damage and not Brasfield, the damage appeared months after Brasfield completed the job in question, and there was no threat of litigation. [R. 47-1 at 19.] In response, Brasfield first argues

that it suffered an injury in fact because it had to repair Harrod's defective concrete at a cost of over $600,000, and because the damages were already incurred, there is no question as to whether Brasfield has or will be injured. [R. 50 at 18.] Second, Brasfield argues that its injury is "fairly traceable" to Harrod's conduct of failing to supply concrete in accordance with the agreed-upon specifications. *Id.* Third, Brasfield argues that its injuries can be redressed by an order from the Court awarding damages to Brasfield for the costs incurred fixing Harrod's defective concrete. *Id.*

In Reply, Harrod argues that because the owner was injured and the owner issued no threat or demand on Brasfield to repair the concrete, Brasfield repaired the concrete on its own accord without there existing any actual or imminent injury. [R. 54 at 1–2.] Further, Harrod argues that no contractual requirement existed for Brasfield to fix the concrete. *Id.* Accordingly, Harrod argues, "Brasfield does not acquire standing or create an actual injury simply because it decided to placate and mollify the Owner, a substantial customer." *Id.*

At its core, this is a contractual dispute between two parties. "Generally, a party to a contract has standing to litigate the rights and obligations arising out of a contract." *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 725 (E.D. Mich. 2003) (citing *Almond v. Capital Props., Inc.*, 212 F.3d 20, 24 (1st Cir. 2000)). As discussed above, Brasfield argues that it suffered an injury in fact because it had to spend over $600,000 repairing allegedly defective concrete supplied by Harrod. *See Farmers Union Milk Marketing Co-op v. Yuetter*, 930 F.2d 466, 471 n.3 (6th Cir. 1991) (discussing financial loss as constituting an injury in fact). Next, Brasfield proffers evidence that the injury can likely be traced to Harrod failing to supply concrete in accordance with their contractual obligations instead of the result of an independent action or third party. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he

6

injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.") (citations omitted). Finally, Brasfield argues that its injuries would be redressed by a court order awarding damages for the cost Brasfield incurred fixing the allegedly defective concrete. *See Mesa Underwriters Specialty Ins. Co. v. Secret's Gentleman's Club*, 751 Fed. App'x 715, 733 (6th Cir. 2018) (holding that a favorable ruling providing court-ordered damages constitutes redressability).

Given the facts in this case, the Court is persuaded that Brasfield has met the threshold inquiry of standing. "Standing is not intended to be a particularly high bar; instead, the doctrine serves to prevent a litigant from raising another's legal right." 59 Am. Jur. 2d *Parties* § 29 (2020).

B

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-

moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court then must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52). In making this determination, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999)).

**a**

Harrod argues in its Motion for Summary Judgment that Brasfield's breach of contract allegations must be dismissed. [R. 47-1 at 20.] In Kentucky, a plaintiff must demonstrate three things to establish a breach of contract claim: 1) the existence of a contract; 2) breach of that contract; and 3) damages flowing from a breach of that contract. *Delamar v. Mogan*, 2015 WL 225404, at *5 (W.D. Ky. Jan. 15, 2015) (citing *Metro Louisville/Jefferson County Government v. Abma*, 326 S.W. 3d 1, 8 (Ky. Ct. App. 2009) (citation omitted)); *see also Fifth Third Bank v. Lincoln Financial Securities Corp.*, 453 F. App'x 589, 601 (6th Cir. 2011). Here, Brasfield and Harrod disagree about the nature of the contract, what the contract required, whether the contract was breached, and whether there were any damages.

In the Complaint, Brasfield argues that Harrod breached the contract by not furnishing concrete for the project according to the Specifications, the Hardscape Mix Design, and the Parking Deck Mix Design. [R. 1 at 5.] In its Motion for Summary Judgment, Harrod argues that

8

the breach of contract allegations must be dismissed because the claim "relies entirely on the Purchase Order," which does not apply to the hardscape or parking deck concrete and the specifications referred to in the Complaint "do[] not correspond with [Brasfield's] own purchase order and specifications." [R. 47-1 at 22.] Drawing all reasonable inferences in favor of Brasfield, as the nonmoving party, the Court finds at this stage that summary judgment is not appropriate on the breach of contract claim.

First, a reasonable factfinder could find the existence of a contract between Brasfield and Harrod. The existence of a contract requires an offer, acceptance, and consideration. *See Kirkland v. St. Elizabeth Hosp. Medical Ctr.*, 34 F. App'x 174, 178 (6th Cir. 2002) (laying out existence of contract factors). Around March 15, 2016, Brasfield and Harrod entered into a purchase order in which Harrod agreed to supply concrete for the construction project. [R. 1 at 2.] As part of the project, Harrod also submitted mix designs to Brasfield stating that the concrete manufactured for the sidewalks and "various portions of the parking decks" would contain six percent entrained air. [R. 1 at 3; R. 1-3 at 2; R. 1-4.] Further, as Brasfield argues, the following five factors militate toward a finding that a contract existed between the two parties: 1) Harrod provided a quote to Brasfield for the Hardscape Concrete; 2) Harrod proposed a mix design to Brasfield for the Hardscape Concrete; 3) Harrod manufactured and delivered the Hardscape Concrete to the project; 4) Harrod invoiced Brasfield for the Hardscape Concrete it manufactured and delivered; and 5) Brasfield paid Harrod for the Hardscape Concrete. [R. 50 at 20.]

Harrod argues that the purchase order is inapplicable to the parking deck concrete and therefore its terms do not apply to this breach of contract action. However, the Harrod sales manager who signed the purchase order admitted that the conditions and terms within it applied

9

to all of the concrete Harrod supplied for the Project. [R. 50-20 4–5.] Furthermore, although the hardscape concrete's unit price was not originally among those listed in the purchase order, Harrod submitted a quote for the additional work and a proposed mix design and the parties proceeded as though it were part of the purchase order. In Kentucky, the law has long recognized that parties, through a course of dealings, may amend a written agreement and waive compliance with provisions that require that amendments be made by a written change order. *See Willey v. Terry & Wright, Inc.* 421 S.W.2d 362, 363 (Ky. 1967). Therefore, the Court finds that sufficient evidence exists that would permit a reasonable factfinder to conclude that a contract existed between the parties.

However, even if the purchase order does not apply to the Hardscape Concrete as Harrod argues, the Court may find that a contract for hardscape concrete was formed under the UCC. *See Iron Horse Energy Servs., Inc. v. Southern Concrete Prods., Inc.*, 443 F. Supp. 3d 952, 954 (W.D. Tenn. 2020) (finding a contract to furnish concrete to fall under the UCC and denying 12(c) motion). Under Kentucky's UCC law, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." KRS § 355.2-204(1).

Here, Harrod submitted a mix design and offered a price that Brasfield accepted, Harrod supplied hardscape concrete, and Brasfield paid for the hardscape concrete. These facts appear to indicate that the parties formed a binding contract for the sale of a good (concrete) and that the UCC may therefore apply as to the hardscape concrete. *See Step-Saver Data Sys. v. Wyse Tech.*, 929 F.2d 91, 100 (3d Cir. 1991) (finding that parties formed a contract when they agreed to specific goods involved, the quantity, and the price).[7]

---

[7] Some district courts have found that the delivery *and* pouring of concrete may take a contract out of the realm of the UCC. *See, e.g.*, *Steven T. Huff LLC v. Monarch Cement Co.*, 2017 WL 10506793, at *3 (W.D. Mo. June 19,

10

Second, a reasonable factfinder could conclude that the contract was breached. Brasfield has submitted evidence both that Harrod warranted that the hardscape concrete and deck wash concrete would contain at least six percent entrained air and that outside consultants found that neither the hardscape concrete nor the deck wash contained six percent entrained air. [R. 1-3 at 2; R. 1-4; R. 50 at 24.] Harrod argues both that Brasfield should have made arrangements for testing at the time the concrete was poured and that Brasfield engaged in deficient placement and finishing processes. [R. 54 at 4–5.] Furthermore, Brasfield and Harrod, in addition to third-party defendant Nimrod, retained expert witness that differ in their analysis of the primary reasons for the concrete scaling. [R. 47-1 at 18; R. 50 at 12–13.] Generally, the existence of competing expert opinion prevents resolution at the summary judgment stage. *Saint Gobain Autover, USA, Inc. v. Xinyi Glass North America, Inc.*, 666 F. Supp. 2d 820, 833 (N.D. Ohio 2009); *see also Sanofi–Aventis U.S. LLC v. Sandoz, Inc.*, 2008 WL 2473745, at *4 (D.N.J. June 12, 2008) ("[O]rdinarily, the mere existence of competing expert opinion dispels resolution by summary judgment.").

Finally, a reasonable factfinder could conclude that damages flowed from a breach of the contract. Brasfield argues that it spent over $600,000 to repair the scaling concrete. [R. 50 at 14.] Harrod contends that Brasfield was not actually forced to repair the deficient concrete but instead merely did so to preserve its relationship with the owner of the Summit at Fritz Farm project. [R. 47-1 at 19.] However, Brasfield argues that it was in fact contractually responsible to fix the concrete and that it is now seeking a recovery of damages from Harrod for providing concrete that did not meet its contractual obligations. [R. 50 at 14.] Brasfield points to the

---

2017) (denying summary judgment because the court could not determine whether the UCC or common law applied to concrete contract that involved delivery of concrete but was unclear as to its other terms). However, even if the Court were to ultimately find that the UCC does not apply to this contract, genuine issues of material fact remain as to the breach of contract question and summary judgment is not appropriate at this stage in the litigation.

11

contract between the owner and Brasfield that included a warranty provision and a corrective work provision that necessitated the remedial work. [R. 50-13.] Construing the facts in a light most favorable to Brasfield, a reasonable factfinder could conclude that the damages to Brasfield flowed from a breach of the contract between Harrod and Brasfield, and the Court will deny Harrod's motion for summary judgment as to the breach of contract claim.

### b

Harrod also argues in its Motion for Summary Judgment that Brasfield's breach of warranty claims must be dismissed. [R. 47-1 at 23.] In the Complaint, Brasfield argues that Harrod breached both express and implied warranties. [R. 1 at 6.]

### 1

Under the UCC, a seller creates an express warranty through "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," and "[a]ny description of the goods that is made part of the basis of the bargain. . . ." KRS § 355.2-313(1)(a)–(b). Certain words, such as "warrant" or "guarantee" need not be used, and the seller does not have to specifically intend to make a warranty for a warranty to be created. KRS § 355.2-313(2). Further, "whether an express warranty was created is generally a question for the trier of fact." *Morgan v. Cabela's Inc.*, 788 F. Supp. 2d 552, 556 (E.D. Ky. 2011) (citing *Moore v. Mack Trucks, Inc.*, 40 S.W.3d 888, 891 (Ky. App. 2001)).

Here, Brasfield argues that Harrod submitted mix designs for the hardscape concrete and deck wash that stated that they would contain, at a minimum, six percent entrained air. [R. 1-3 at 2; R. 1-4; R. 50 at 26.] Harrod argues that no express warranty exists because no supposed warranty language is contained in the purchase order, which forms the basis of the Complaint. [R. 47-1 at 23.] However, "[c]ontractual duties extend by law far beyond those seen within the

'four corners' of the written contract document, and must be searched for within the hidden veils of the law." 3 Bruner & O'Connor Construction Law, *Doctrine of Warranty: Express and Implied Warranties in Construction* § 9:1 (2020); *see also North Georgia Ready Mix Concrete Co., Inc. v. L & L Const., Inc.*, 508 S.E.2d 722, 726 (Ga. App. 1998) (finding that any description of goods that form the basis for a bargain creates an express warranty). Here, Harrod's mix designs provided certain specifications, and there is a genuine issue of material fact as to whether Harrod's concrete met those specifications. [R. 50 at 26.] Accordingly, because the question of whether an express warranty was created is generally a question for the trier of fact, the Court will deny Harrod's Motion for Summary Judgment as to the issue of the express warranty. *See Morgan*, 788 F. Supp. 2d at 556.

**2**

The next issue is whether Harrod supplied concrete that satisfied the implied warranty of merchantability. Kentucky law provides the implied warranty of merchantability as follows:

> (1) Unless excluded or modified (KRS 355.2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
> (2) Goods to be merchantable must be at least such as
>   (a) pass without objection in the trade under the contract description; and
>   (b) in the case of fungible goods, are of fair average quality within the description; and
>   (c) are fit for the ordinary purposes for which such goods are used; and
>   (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>   (e) are adequately contained, packaged, and labeled as the agreement may require; and
>   (f) conform to the promises or affirmations of fact made on the container or label if any.
> (3) Unless excluded or modified (KRS 355.2-316) other implied warranties may arise from course of dealing or usage of trade.

KRS § 355.2-314.

Harrod specifically argues that products must merely be of "fair average quality" and "fit for the ordinary purposes" and because the alleged defects were merely aesthetic, the statute does not support a finding that the implied warranty of merchantability was breached. [R. 47-1 at 24-25.] However, the Court is persuaded by Brasfield's argument that even if the defects were "merely aesthetic," concrete should not begin to crumble within one year of installation. [R. 50 at 26.] Further, Brasfield has supplied expert evidence that Harrod may not have provided concrete that satisfied their contractual obligations, specifically as it relates to the entrained air percentage. *See New Prime, Inc. v. Brandon Balchune Constr., Inc.*, 2017 WL 6419088, at *6 (M.D. Pa. Dec. 15, 2017) (denying concrete supplier's motion for summary judgment on breach of implied warranty claim where contractor supplied direct evidence of defects in the supplied concrete).[8] Because there are genuine issues of material fact on this issue, the Court will decline to grant summary judgment as to the breach of implied warranty of merchantability claim.

### 3

The next issue is Brasfield's claim in the Complaint that Harrod breached the implied warranty of fitness for a particular purpose by failing to furnish concrete according to the mix design specifications. [R. 1 at 6.] Harrod argues in its Motion for Summary Judgment that because the concrete provided "was ordinary concrete for ordinary purposes," no implied warranty of fitness for a particular purpose exists. [R. 47-1 at 25.] In response, Brasfield argues that the facts, including Harrod's knowledge of the particular use for the concrete and Harrod's knowledge that Brasfield was relying on Harrod's skill and judgment to provide concrete that

---

[8] In its Reply, Harrod argues that the *New Prime* case actually supports Harrod's position because the "direct evidence" at issue in that case came from test results from the plant in contrast to Brasfield's field testing roughly a year after delivery and placement of the concrete. [R. 54 at 13.] While it is true that some of the evidence at issue in *New Prime* was gathered more contemporaneous to the pouring of the concrete than the evidence in this case, much of the evidence in *New Prime* was also gathered on site and after the concrete was poured. Furthermore, even if Brasfield may satisfy its burden of proof using circumstantial evidence so long as it can satisfactorily prove the absence of secondary causes. *New Prime*, 2017 WL 6419088, at *6.

complied with the mix designs and specifications, would lead a reasonable factfinder to conclude that Harrod breached the implied warranty of fitness for a particular purpose. [R. 50 at 27.] A finding of an implied warranty of fitness for a particular purpose is contingent on two general facts: "[f]irst, the seller must be aware at the time of contracting of a particular purpose for which the buyer intended to use the goods. Second, the buyer must rely on the seller's skill or judgment to select or furnish goods suitable for that particular purpose." *Travelers Property Cas. Co. of America v. Rapid Power Corp.*, 2013 WL 1898833, at *8 (W.D. Ky. May 13, 2013) (quoting *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 423 (6th Cir.1981) (citation omitted)); *see* KRS § 355.2-315 (Kentucky's adoption of U.C.C. § 2-315).

Here, material questions of fact exist as to Brasfield's breach of the implied warranty of fitness for a particular purpose. First, Harrod submitted mix designs to Brasfield that the concrete provided would include at least six percent entrained air. [R. 1-3 at 2; R. 1-4; R. 50 at 27.] In addition, Harrod knew that Brasfield was relying on Harrod's "skill and judgment to provide concrete suitable for this applicable that complied with the specifications and mix designs."[9] [R. 50 at 28.] Furthermore, Harrod's plant manager actually knew that the concrete Harrod was supplying did not meet its own mix designs but stated that it was not his "job to question, I guess, their spec, so to speak, I guess." *Id.*

Harrod points to *Duke's Roofing & Exterior Constr., LLC v. Lexis Coatings, LLC*, 2018 WL 4169045, at *4 (E.D. Ky. Aug. 20 2018) for the proposition that this was "garden variety" concrete similar to the ordinary roof coating at issue in *Duke's*. In *Duke's*, the district court

---

[9] Paragraph eight of the Purchase Order, Terms and Conditions states, "[v]endor further realizes that, notwithstanding any drawings, specifications or other express descriptions of material in this order, Purchaser is relying on Vendor's skill and judgment to furnish suitable material for the purposes described herein." [R. 50 at 27–28.]

15

granted summary judgment for the defendant, finding that the plaintiff had failed to demonstrate breach of any express or implied warranties with regards to a roof coating contract. *Id.* at *7.

However, the factual predicate in *Duke's* differs markedly from the facts here. First, unlike in *Duke's* where the defendant was not aware of any particularities of the roof in question, Harrod was acutely aware of the particularities of the project for which they were providing concrete and they even provided a mix design that included specifications, such as six percent or more of entrained air. *Id.* at *3. Second, while Duke's admitted that it never received any specifications for the project from Lexis, Brasfield did receive mix design specifications from Harrod, indicating that Harrod knew the purpose for which Brasfield intended to use the goods, and evidence indicates that Brasfield was relying on Harrod's judgment to furnish concrete that met certain specifications and was suitable for the particular project. *Id.* Therefore, genuine issues of material fact remain and summary judgment is not appropriate.

4

In its Motion for Summary Judgment, Harrod finally argues that even if Brasfield has a valid warranty claim, Brasfield's claim would be barred for the following reasons: 1) Brasfield accepted the goods upon delivery and was unable to revoke acceptance; 2) Brasfield cannot recover from Harrod because Brasfield also failed to comply with the specifications it alleges Harrod breached by failing to test the concrete upon delivery; and 3) Brasfield waived any and all claims. [R. 47-1 at 27–30.] Brasfield responded, contesting each of Harrod's arguments. [R. 50 at 29–32.]

Here, viewing the facts in the light most favorable to Brasfield, Harrod's arguments that Brasfield's warranty claim is barred do not stand. First, although Brasfield accepted the goods, it notified Harrod of the defects in the concrete within a reasonable period of time. Under

16

Kentucky law, once a buyer accepts goods, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." KRS § 355.2-607. Here, shortly after the project was completed, the owner notified Brasfield of the scaling concrete, and within ten days of receiving this notification, Brasfield reached out to Harrod. [R. 50 at 30.] Whether Brasfield should have known that the concrete was defective at an earlier date or whether notifying Harrod ten days after learning of the defective concrete was reasonable is not a matter the Court can now determine as a matter of law. *See United States for Use and Benefit Saunders Concrete Co., Inc. v. Tri-States Design Const. Co., Inc.*, 899 F. Supp. 916, 922 (N.D.N.Y. 1995) ("Whether seven or twenty-eight days in this instance was a reasonable time is clearly an issue that cannot be decided as a matter of law.").[10]

     Second, there is at least a genuine issue of material fact as to whether Brasfield was obligated to inspect the concrete Harrod furnished. Harrod argues that Brasfield was required to test the concrete and failed to do so. [R. 47-1 at 30.] Specifically, Harrod points to the Concrete Work 30.3000 specifications that required on-site testing be conducted, and that contractor was obligated to make arrangements for the tests. *Id.* at 8. In response, Brasfield argues that it was under no obligation to test the concrete on site, and therefore by not doing so, Brasfield was not in violation of the specifications. [R. 50 at 31.] Brasfield points to Section 3.12 of the Hardscape Specification to argue that the owner was ultimately responsible for employing "a testing laboratory acceptable to the Architect to perform all inspection, sampling, and testing, and to submit test reports." [R. 50 at 31.] On this issue, the Court finds that, viewing the facts in

---

[10] In making this argument, Harrod relies on *Salt Lake City Corp. v. Kasler Corp.*, 855 F. Supp. 1560, 1574 (D. Utah 1994). However, *Kasler*, though also dealing with a contract dispute alleging defective concrete, involved the plaintiff waiting six years before bringing suit and ultimately running afoul of the statute of limitations as to the breach of express and implied warranty claims. *Id.* at 1567, 1569.

the light most favorable to Brasfield, there are genuine issues of material fact as to Brasfield's on-site testing responsibilities and will refrain from granting summary judgment on that basis.

Finally, Harrod argues that Brasfield waived all of its claims by failing to reject the goods after having a reasonable opportunity to learn of any alleged deficiencies. [R. 47-1 at 30.] However, as discussed above, there are genuine issues of material fact as to whether Brasfield discovered the alleged deficiencies within a reasonable amount of time and the Court therefore declines to now find that Brasfield waived "any and all claims" as Harrod requests. *Id.*

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Harrod's Motion for Summary Judgment **[R. 47]** is **DENIED**.

This the 14th day of April, 2021.

Gregory F. Van Tatenhove
United States District Judge