UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| BRASFIELD & GORRIE, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil No. 3:18-cv-00066-GFVT-EBA |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| HARROD CONCRETE AND STONE CO., ) | **&** |
| ) | **ORDER** |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the parties' motions for amended or additional findings and motions for an amended or altered judgment. [R. 131; R. 132; R. 134.] After a bench trial, the Court awarded Plaintiff Brasfield & Gorrie $90,313.85 and denied Defendant Harrod Concrete's third-party claims against Nimrod. [R. 128; R. 129.] Both parties now move for more favorable results. Brasfield correctly identifies a $6,372.50 oversight. [R. 134-1 at 5-6.] Otherwise, for the following reasons, neither party shows that the Court clearly erred or that amendment would prevent manifest injustice. Accordingly, Brasfield's motion is **GRANTED** in part and **DENIED** in part and Harrod's motions are **DENIED**.

**I**

In 2015, Brasfield contracted with Fritz Farm Retail Company, the Owner of the project, to construct a mixed-use development. [R. 123 at 2; R. 124 at 2.] Brasfield's scope of work on the Fritz Farm project generally included all site work, paving, hardscapes, two parking structures, and buildings. [R. 111 at 21.] Harrod subsequently provided Brasfield with preliminary quotes for typical concrete mixes, and Brasfield used those quotes to aid in

developing an estimated budget for the project. *Id.* at 50-51. The Owner's landscape architect, and Third-Party Defendant in this case, Nimrod Long & Associates, prepared the specifications for the concrete placed in the sidewalks and landscape retaining walls. [R. 124 at 3.] Harrod produced and delivered the deck wash concrete to Brasfield from July through September 2016. [R. 123 at 5; R. 124 at 11.] Harrod produced and delivered most of the hardscape concrete between January and July 2017 [R. 123 at 5.]

In the beginning of 2018, the Owner started recognizing concrete damage: scaling and additional freeze-thaw damage. [R. 111 at 201; R. 124 at 16.] Initially, Brasfield removed and replaced about 7,500 square feet of the hardscape concrete. [R. 124 at 20.] Brasfield also applied a sealer to all sidewalks, even those that had not shown any freeze-thaw damage. *Id.* at 20-21. In addition, Brasfield repaired the necessary portions of the hardscape retaining walls by "removing loose and scaling materials, rubbing the face of the wall with a concrete material of similar color, and then sealing the retaining wall" using the sealer. *Id.* at 21. Brasfield also "blasted, brushed, and topped with an epoxy resin binder called Sikandar." *Id.* Following subsequent inspection, Brasfield repaired, replaced, and sealed an additional 2,500 feet of hardscape concrete. *Id.* at 22. Brasfield also "performed some additional repair work on areas of the landscape retaining walls." *Id.* Ultimately, Brasfield replaced approximately 10,000 square feet of hardscape concrete, in addition to hardscape retaining wall and parking deck wash repair on the Fritz Farm project. [R. 123 at 6; R. 124 at 20, 22.]

The Court found that Harrod's failure to follow its own concrete mix design was the primary cause of the concrete damage. [R. 128 at 20.] Accordingly, the Court awarded Brasfield the amount that would put it in the same position if Harrod had properly performed the contract, though deducting 10% to account for factors contributing to the damage but not

2

attributable to Harrod. *Id.* The Court also deducted costs unnecessary for the concrete's repair. *Id.* at 21-25. Harrod now seeks amended findings that it is less responsible for the concrete damage and that Nimrod is liable for part of the damage. [R. 131; R. 132.] Brasfield seeks a higher monetary award. [R. 134.]

**II**

Both parties move to amend the Court's findings of fact, conclusions of law, and judgment under Federal Rules of Civil Procedure 59(e) and 52(b). Rule 59(e) allows a litigant to file a motion to alter or amend a judgment of a district court where there has been a clear error of law, newly discovered evidence, an intervening change in the law, or to prevent manifest injustice. *See, e.g.*, *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 833 (6th Cir. 1999). A motion under Rule 59(e) is "not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Moreover, a "manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Zillow, Inc. v. Bork*, No. 3:19-cv-00049-GFVT, 2023 U.S. Dist. LEXIS 36668, at *5 (E.D. Ky. Mar. 3, 2023) (quoting *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). Whether to grant a Rule 59(e) motion is generally a matter within the district court's discretion. *See Engler*, 146 F.3d at 374.

Similarly, Rule 52(b) allows a party to move the Court to amend its findings or make additional findings and amend its judgment accordingly. Fed. R. Civ. P. 52(b). A Rule 52(b) motion is proper only upon a showing of "a manifest error of fact or law by the trial court, newly discovered evidence, or a change in the law" and does not allow a party "to relitigate old issues, to advance new theories, or to rehear the merits of a case." *Adams v. Baker*, No. 1:16-cv-335, 2020 U.S. Dist. LEXIS 11984, at *6 (E.D. Tenn. Jan. 24, 2020); *Diebitz v. Arreola*, 834 F. Supp.

3

298, 303 (E.D. Wis. 1993) (quoting *Renfro v. City of Emporia*, 732 F. Supp. 1116, 1117 (D. Kan. 1990)).

**A**

Brasfield argues that the Court erroneously deducted CTL Group testing costs, Sikadur 22 costs for parking deck wash repairs, and sealer costs applied to sidewalks and retaining walls. [R. 134-1 at 2.] It asks the Court to amend its findings of fact and conclusions of law to award it these costs. *Id.* And if the Court declines to award Brasfield these costs, Brasfield argues that the Court erroneously deducted $56,861 that represents credit for owner payments. *Id.*

**1**

The parties agree about the CTL Group testing costs. Brasfield alleges that the Court erroneously deducted CTL Group testing costs twice. *Id.* at 5-6. Indeed, the Court deducted $18,653.01 that Brasfield accrued for onsite concrete testing during the repairs. [R. 128 at 21-22.] The Court separately deducted $6,372.50 for concrete core examination before repairs. *Id.* at 22-23. However, the $18,653.01 for testing included the $6,372.50 for core examination. [*See* R. 134-1 at 5 (citing Pl. Tr. Ex. 65).] By deducting both costs separately, the Court erroneously deducted $6,372.50 for concrete core examination twice. Harrod agrees. [R. 138 at 12 ("[I]t appears that this may be correct. The cost of the CTL Group testing should be deducted, but only once.").] Accordingly, the Court will increase Brasfield's award by $6,372.50.

**2**

As part of the concrete remediation, Brasfield installed an epoxy product called Sikadur at a cost of $108,000 and a penetrating sealer at a cost of $84,500. [*See* R. 128 at 22.] The Court deducted both costs from Brasfield's award. *Id.* The Court deducted the costs for two reasons. First, the items constituted added value because neither were included in the original

4

construction. *Id.* Though Brasfield alleged that it applied the Sikadur epoxy coating because that method was "cost effective," the Court found that Brasfield failed to demonstrate that "the product was necessary or that Harrod should be financially responsible for it." *Id.* at 22 n.13. Second, Brasfield sought to recover the cost of sealing all hardscape and retaining walls that were not sealed originally rather than only the parts being replaced. *Id.* (citing R. 122 at 70).

Brasfield argues that these deductions are erroneous. Brasfield contends that deducting the Sikadur epoxy and penetrating sealer is inconsistent with the Court's finding that Harrod's failure to provide concrete conforming to the mix design was the primary factor contributing to the concrete deterioration. [R. 134-1 at 6-7.] However, Brasfield must still prove damages with reasonable certainty. *See Ford Contracting, Inc. v. Ky. Transp. Cabinet*, 429 S.W.3d 397, 407 (Ky. Ct. App. 2014). Brasfield's only support is the testimony of Bill Steed, who stated that using Sikadur was "cost effective" and was used to restore the concrete. [R. 134-1 at 7-8.] This is the same evidence that the Court considered and rejected in its findings of fact and conclusions of law. [R. 128 at 22 n.13 (citing R. 112 at 110).] Brasfield provides similar allegations that the penetrating sealer was intended to remedy the damage caused by Harrod's nonconforming concrete. [R. 134-1 at 10-11.]

Simply put, Brasfield argues that the Court should award it costs for the Sikadur epoxy because the epoxy "was used solely to repair the parking deck washes" and "was a reasonable and necessary cost incurred by B&G as a direct result of Harrod's breach." *Id.* at 7-9. Brasfield also seeks costs for the penetrating sealer because the sealer "was necessary to protect all the hardscape concrete from additional freeze-thaw damage" that "would likely have occurred" had Brasfield not sealed the hardscape. *Id.* at 10-11. If true, Brasfield would be entitled to costs for the epoxy and sealer. Yet Brasfield fails to support either contention. Because the Sikadur

5

epoxy and penetrating sealer were not part of the original construction and Brasfield fails to provide evidence that the products remedied the effects of Harrod's nonconforming concrete, Brasfield has not shown that the Court erred by deducting these costs.

### 3

To arrive at a final damage award, the Court accepted the total costs that Brasfield submitted and deducted costs for which Brasfield failed to establish entitlement—like the Sikadur and penetrating sealer. The Court also deducted $200,000 for Nimrod Long's settlement and $56,861 for Owner payments to Brasfield for supplemental work. [*See* R. 128 at 13; Pl. Tr. Ex. 64.] Now, Brasfield contends that the $56,861 should have been specifically allocated to the Sikadur and sealer costs. [R. 134-1 at 3.] In effect, Brasfield's argument means that the Court should have deducted $136,639 for the Sikadur and sealer rather than $193,500.

However, Brasfield consistently represented to the Court that it was seeking $193,500 for the Sikadur epoxy and sealer. For example, Brasfield's damages summary attributes $193,500 to "Parking Deck Wash Remediation," which included the Sikadur and sealer, and attributed the $56,681 to other projects. [Pl. Tr. Ex. 64.] Similarly, Brasfield's proposed findings of fact and conclusions of law stated that the $56,861 was for "work not related to the concrete repairs" and repeatedly represented that Brasfield incurred $193,500 in costs to repair the parking deck washes. [R. 124 at 46-47.] In its reply in support of its motion, Brasfield even acknowledges that it sought $193,500 for the Sikadur and sealer. [R. 139 at 2 ("[Brasfield] stated that B&G incurred damages of $193,500 for the parking deck wash repairs and failed to specifically allocate the $56,861 owner payments.").]

The Court does not believe, as Harrod suggests, that Brasfield failed to allocate these costs in order to mislead the Court. [*See* R. 138 at 4-5.] It appears to be a simple mistake by

Brasfield's counsel. But Brasfield does not show that the Court erred by relying on these representations, and attorney error generally does not establish manifest injustice for amendment under Rules 52(b) or 59(e). *See Cranmer v. Harleysville Ins. Co.*, 719 Fed. App'x 95, 101 (3d Cir. 2017); *Gomez v. City of New York*, 805 F.3d 419, 423-24 (2d Cir. 2015) (noting that courts usually do not disturb a judgment based upon counsel's "mistake or omission"); *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17-18 (D.C. Cir. 2015) (holding no manifest injustice where plaintiffs' inadvertent omission of arguments "could have [been] easily avoided"); *FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678, 687 (6th Cir. 1999) (holding counsel mistake insufficient under Rule 60). Brasfield provides no reason to deviate from this principle.

Accordingly, while the Court will increase Brasfield's award by $6,372.50 for erroneously double-deducting concrete examination costs, Brasfield fails to show that it is entitled to an amendment awarding it costs for the Sikadur epoxy or penetrating sealer. Brasfield likewise fails to show that it is entitled to amended findings of fact and conclusions of law specifically allocating Owner payments.

**B**

Harrod also requests that the Court alter, amend, or add to its findings of fact and conclusions of law. [R. 131; R. 132.] In its two motions, Harrod provides 24 arguments.[1] These arguments boil down to concerns over the Court's determinations regarding four topics: factual findings, the hardscape concrete contract, third-party claims against Nimrod, and liability

---

[1] All motions must state with particularity the grounds for the motion, the relief sought, and the argument necessary to support it. L.R. 7.1(a). Yet Harrod's motion under Rule 52(b) merely provides 15 proposed findings of fact and conclusions of law without any explanation. Harrod's failure to provide argument in support of its motion is grounds for denial under Rule 7.1. *See, e.g.*, *Scott v. Hammons*, No. 6:16-cv-0018-GFVT-HAI, 2018 U.S. Dist. LEXIS 25812, at *9 (E.D. Ky. Feb. 16, 2018). Nevertheless, the Court analyzes Harrod's proposed findings and concludes that Harrod fails to establish entitlement to relief.

7

apportionment between Harrod and Brasfield.  Because Harrod has not shown that the findings of fact and conclusions of law present error, its motions will be denied.

1

Harrod objects to several of the Court's factual determinations.  [R. 131; R. 132.]  First, Harrod argues that the Court erroneously found that Brasfield used a curing compound on the parking deck area.[2]  [R. 131-1 at 1-3; R. 132-1 at 1-2.]  Harrod cites Mr. Salinas's deposition testimony, where he stated that he did not recall the parking deck strips and that he oversaw the curing of other concrete using Burlene blankets.  [R. 131-1 at 2.]  However, Robert Gambill, Brasfield's on-site superintendent, testified at trial that the parking deck wash concrete was cured using a chemical curing compound.  [R. 111 at 154.]  Although Mr. Gambill stated in his deposition that he could not recall the parking deck curing process, the Court found credible Mr. Gambill's trial testimony.  [R. 117 at 56-57; R. 128 at 5.]  Thus, the Court did not err by finding that Brasfield used a curing compound on the parking deck area.

Next, Harrod contends that the "Court erroneously found, based on the mix designs, that the air content of the concrete must be 6% in order to be compliant and freeze-thaw resistant" because "air entrainment exceeding 4% has been deemed adequate."  Thus, Harrod argues, it "should not be held to the 6% standard."  [R. 131-1 at 5; R. 132-1 at 2.]  This argument confuses the analysis.  To succeed on its contract claim, Brasfield had to show that it had a contract with Harrod, Harrod breached the contract, and harm resulted from the breach.  *Arnold v. Lib. Mut. Ins. Co.*, 392 F. Supp. 3d 747, 774 (E.D. Ky. 2019).

---

[2] Here, Harrod also argues that William Salinas—one of three foremen on the project—did not oversee the placement of all hardscape and deck wash concrete.  [R. 131-1 at 1-2.]  However, Mr. Salinas and Mr. Gambill both directly testified that Mr. Salinas oversaw and supervised the placement of all concrete in the hardscape sidewalks, retaining walls, and parking deck washes.  [See R. 118 at 33; R. 111 at 127.]

Harrod contracted to deliver concrete with a compressive strength of 4,000 psi, a maximum water to cement ratio of 0.458, and entrained air of at least 6%. [R. 128 at 14-15.] The Court then determined that Harrod breached the contract because Harrod delivered concrete with a water to cement ratio above 0.458 and entrained air below 6%. *Id.* at 16. In the alternative, the Court also found that Harrod breached warranties under the UCC because Harrod's concrete failed to conform to these standards. *Id.* at 17. Thus, the Court did not hold Harrod to 6% entrained air because the Court believes that level to be adequate. Rather, the Court held Harrod to 6% entrained air because it is what Harrod promised. *Id.* ("[T]he bottom line is that Harrod produced and delivered concrete that did not conform to the mix design.").

Harrod also argues that the concrete testing "is insufficient to conclude that Harrod did not adequately entrain air in all of the hardscape concrete" because the tests included too few concrete core samples. [R. 132-1 at 5.] The Court will also consider these assertions below when discussing the factors contributing to the concrete failure. But to the extent that Harrod argues the Court cannot rely on the concrete core samples to find air entrainment levels, it provides no argument. The sample size may affect the weight of the evidence, but Harrod provides no authority establishing that too few core samples warrant the complete exclusion of the test results.

**2**

The Court's findings acknowledged that the parties' purchase order did not explicitly include the hardscape concrete. [R. 128 at 3.] However, the Court found that applying the purchase order's terms to the hardscape concrete was consistent with the parties' course of dealings. *Id.* Harrod argues that the purchase order should not apply to the hardscape concrete because "there is no testimony or other indication that Harrod orally agreed or acquiesced in the

9

terms and conditions" of the purchase order for the hardscape concrete. [R. 131-1 at 3-4; *see also* R. 132-1 at 2.] But Harrod fails to mention the testimony that the Court relied upon for its conclusion. The Court explained that "a review of Harrod's invoices for the hardscape concrete demonstrates that Harrod employed the price established in the Purchase Order plus any specific admixtures for the hardscape concrete." [R. 128 at 3 (citing R. 124 at 7-8).] The Court also cited Tim Condo, Harrod's sales manager who executed the Purchase Order on Harrod's behalf, who testified that the "purchase order applied to all of the concrete that was supplied by Harrod to the project." *Id.* at 3-4 (quoting R. 109 at 45).

Harrod also contends that "the Court erroneously found that the Purchase Order was amended to include later identified products such as the hardscape concrete." [R. 131-1 at 4.] Harrod does not specify where the Court found that the Purchase Order was amended. In fact, the Court's findings do not include any mention of the purchase order being amended. But to the extent that Harrod believes the parties' course of dealings amended the contract, it misunderstands the role that parties' course of dealings play in contract formation. A course of dealing is "a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." KRS § 355.1-303(2). Accordingly, a course of dealing merely assists in the interpretation of a contract; it does not amend one. *See, e.g., J.A. Street & Assocs., Inc. v. Bud Rife Const. Co., Inc.*, 2010 WL 2326538, at *5 (Ky. Ct. App. June 11, 2010).

**3**

The Court found that Harrod cannot recover from Nimrod because whether Nimrod was negligent is irrelevant; the issue was that Harrod failed to abide by its own mix designs. [R. 128

at 25.] Harrod argues that this finding was in error. [R. 131-1 at 12; R. 132-1 at 7.] Harrod contends that it is entitled to recover from Nimrod for Nimrod's negligence and negligent misrepresentation of the suitability of the 3,000 psi specification. [*See* R. 122 at 55.]

Without support, Harrod plainly alleges that "the ONLY reason that Harrod based its mix design on the 3,000 psi specification is that Nimrod recommended it." [R. 131-1 at 12; *see also* R. 132-1 at 7 ("Harrod's concrete . . . was designed and produced according to Nimrod's specification.") (no citation).] Harrod's factual contentions must have evidentiary support. *See* Fed. R. Civ. P. 11(b)(3). Harrod provides none. Instead, the facts presented demonstrate that in creating the mix designs, Harrod did not rely on, or even look at, Nimrod's specifications. [*See* R. 114 at 4.] Thus, Harrod is not entitled to recover from Nimrod regardless of whether Nimrod was negligent.[3]

**4**

The Court found that Harrod's failure to abide by its own mix designs was the primary factor contributing to the concrete deterioration at the Fritz Farm project. [R. 128 at 13.] Even so, Harrod argued that other contributing factors should diminish Harrod's responsibility. [*See* R. 122 at 67.] Harrod alleged that other contributing factors included poor finishing, improper curing, the addition of water, and failure to apply penetrating sealer.[4] *Id.* at 13-21; [R. 123.] Harrod also cited post-production causes of low air content. *Id.* at 19. Agreeing in part, the

---

[3] Harrod similarly argues that Harrod cannot be liable to Brasfield because "Brasfield directed Harrod to produce the hardscape concrete that was specified by Nimrod." [R. 131-1 at 11; *see also* R. 132-1 at 6.] Yet as discussed, Harrod breached by failing to comply with its own design and nonetheless did not use Nimrod's specifications. [*See* R. 111 at 4.]

[4] Dr. Terry Holland testified "about the concrete's water cementitious ratio (W/CM) indicated by Harrod's batch tickets." [R. 131-1 at 6.] Harrod now argues that the Court should have excluded Dr. Holland's testimony because "he did not review the batch tickets prior to issuing his report [and the batch tickets] were not listed in his expert witness report." *Id.*; [R. 132-1 at 3.] Harrod previously presented the same argument. [*See* R. 122 at 16.] Nevertheless, Dr. Holland's report shows that he relied upon the batch tickets because the tickets were included as an exhibit to David Harrod's deposition, which is cited in Dr. Holland's report. [*See* R. 123 at 2-4; Pl. Tr. Ex. 68.]

11

Court deducted 10% from Brasfield's remaining damages due to Brasfield's finishing errors and the application of Magnesium Chloride deicer. [R. 128 at 23.]

However, the Court specifically rejected Harrod's arguments that improper curing, the addition of water, and the failure to apply penetrating sealer contributed to the concrete damage. *Id.* at 11-13. The Court also found that Harrod's production errors caused the concrete to not comply with its submitted mix design. *Id.* at 15-17. In the present motions, Harrod simply makes these arguments again. [R. 131-1 at 6-11; R. 132-1 at 3-7.] But Rules 59(e) and 52(b) do not permit a party simply to re-argue issues. *See Engler*, 146 F.3d at 374; *Adams*, 2020 U.S. Dist. LEXIS 11984, at *6. Accordingly, Harrod fails to establish that the Court clearly erred by attributing 90% fault to Harrod.[5]

Finally, Harrod argues that Brasfield failed to fulfill its own obligations. First, Harrod argues that "Harrod cannot be blamed" for Brasfield's "failure to obtain on-site testing." [R. 132-1 at 5.] True, Brasfield did not coordinate or arrange any on-site testing by a third party to ensure that the concrete product conformed to the approved mix design. [R. 123 at 5; R. 124 at 27.] However, according to the contract between the Owner and Brasfield, the Owner was responsible for on-site concrete testing and opted not to perform onsite hardscape concrete testing. [R. 124 at 27 (citing P. Tr. Ex. 2 at 12 ("The Owner shall employ a testing laboratory. . . to perform all inspection, sampling and testing, and to submit test reports."))]. Moreover, inexplicably, three on-site tests were still performed and showed air entrainment levels under 6%. [*See* R. 128 at 15 (discussing concrete core samples showing air deficiency).] Thus, Harrod

---

[5] Although the Court rejected Harrod's argument regarding popouts, the Court did not specifically discuss it. Harrod contends that the parking deck concrete damage "was non-air related 'popouts'" caused by a piece of porous aggregate that expands. [R. 122 at 17; R. 131-1 at 9; R. 132-1 at 4.] Harrod represents that Dr. Holland testified that "the damage in the parking deck strips was non-air related popouts." [R. 131-1 at 9.] This misconstrues Dr. Holland's testimony. Dr. Holland also discussed scaling caused by freeze-thaw damage attributable to Harrod's failure to adhere to their mix design. [R. 112 at 158-62.]

12

fails to show that it "cannot be blamed" for Brasfield's "failure to obtain on-site testing." [R. 132-1 at 5.]

Harrod also argues that Brasfield cannot recover because it breached the parties' contract by not testing the concrete on site, not sealing it, not curing it, and failing to place and finish it in a proper manner. [R. 131-1 at 11; R. 132-1 at 6.] Even if true, Harrod does not explain how these would constitute breach of contract. Indeed, Brasfield completed its promise—to pay Harrod for the concrete. [*See* R. 128 at 14-15.] In addition, Harrod fails to show that Brasfield defied any obligation to test the concrete, seal it, or cure it. Rather, Harrod's failure to follow its own mix design was the primary cause of the damage to the concrete. *Id.* at 20. And the Court accounted for Brasfield's contribution to the concrete damage from its finishing errors. *Id.* at 23. Accordingly, Harrod fails to show that the Court erred by attributing 90% fault to Harrod.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Harrod Concrete and Stone's Motion to Alter or Amend Findings of Fact and Conclusions of Law and Judgment under Rule 59(e) [**R. 131**] is **DENIED**;

2. Defendant Harrod Concrete and Stone's Motion for Amended and/or Additional Findings of Fact, Conclusions of Law, and Judgment under Rule 52(b) [**R. 132**] is **DENIED**;

3. Plaintiff Brasfield & Gorrie's Motion to Amend Findings of Fact and Conclusions of Law and Revise Judgment [**R. 134**] is **GRANTED in part** and **DENIED in part** as follows:

  a. Brasfield & Gorrie's motion is **GRANTED** to the extent that it seeks an award increase of $6,372.50 to avoid a redundant deduction of CTL Group testing costs and

  b. Brasfield & Gorrie's motion is otherwise **DENIED**; and

4. An amended Judgment will issue accordingly.

This the 27th day of June, 2023.

Gregory F. Van Tatenhove
United States District Judge